**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**IRIS MEYER,** *as Trustee of the*
*Iris Meyer Trust***,**

                        **Plaintiff,**          **REPORT AND**
                                                     **RECOMMENDATION**
      -against-

                                               **08-CV-5147 (JBW)**
**RAFIK AHMAD and SHAREEF GENERAL
CONSTRUCTION, LLC,**

                        **Defendants.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiff Iris Meyer ("plaintiff"), as Trustee of the Iris Meyer Trust ("the Trust"), commenced this diversity action on December 23, 2008, against defendants Rafik Ahmad ("Ahmad") and Shareef General Construction, LLC ("SGC") (collectively, "defendants"), alleging multiple torts to land. On May 15, 2009, the Clerk of the Court noted SGC's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, but declined to make a similar notation with respect to Ahmad, due to concerns regarding the adequacy of service on him. On May 20, 2009, plaintiff moved for default judgments against both defendants pursuant to Rule 55(b)(2). Alternatively, plaintiff sought a judgment of default against SGC and an extension of time for service on Ahmad pursuant to Rule 4(m). In an order dated July 6, 2009, the Honorable Jack B. Weinstein referred the matter to the undersigned magistrate judge for a Report and Recommendation on whether plaintiff's motion for default judgment should be granted and, if so, for an inquest on damages.

      For the reasons that follow, this Court respectfully recommends that judgment be entered against SGC for damages in the amount of $99,602.96, and that the motion be denied

without prejudice as to Ahmad, with leave to renew in the event he is properly served with process and fails to timely respond.

## BACKGROUND

On December 31, 2004, Louis Meyer ("Mr. Meyer") deeded property located at 223-227 Beach 116th Street, Queens, New York ("Trust Property") to plaintiff Iris Meyer, his wife, as Trustee of the Trust. See Ex. A to Affidavit of Louis Meyer ("Meyer Aff."), ECF Docket Entry ("D.E.") #20-1. Since then, and on behalf of the Trust, Mr. Meyer has managed the property, which consists of land and a commercial building ("the Trust Building") leased to tenants. Meyer Aff. ¶ 2. According to Mr. Meyer, tenants of the Trust Property notified him of damage caused to the building and their personal property by demolition and construction activity on an adjacent parcel ("Adjacent Parcel") in October 2007. Meyer Aff. ¶ 2. At the time, the Adjacent Parcel, located at 231 Beach 116th Street, Queens, New York, was owned by defendant Rafik Ahmad. Complaint ("Compl.") ¶ 3, D.E. #1; Meyer Aff. Ex. B, D.E. #20-2.

Ahmad had, in October 2007, employed defendant SGC, a contractor, to perform demolition and construction services on the Adjacent Parcel. Compl. ¶¶ 12, 13. The contractor's activities caused a variety of serious impairments to the Trust Property, including, but not limited to: (1) the listing of the Trust Building northwards; (2) cracks in the Trust Building's interior wall, siding, patio, alley, and sidewalk floor; (3) damage to doors, an oil tank, and oil lines; and (4) destruction of an air conditioner. Compl. ¶ 15. In addition, defendants entered on the Trust Property, without permission, during the demolition and construction, id. ¶ 14, and installed bulkheads for Ahmad's basement foundation and other

utility structures that intruded on the Trust Property. Id. ¶ 16.

On November 2, 2007, Mr. Meyer visited the site to assess the damage and, during the course of that assessment, spoke to "Mr. Ahmad" in person. Meyer Aff. ¶¶ 3, 4.[1] Despite an oral pledge that repairs would be made, construction continued without significant amelioration of the damage caused to the Trust Property. Id. ¶¶ 4, 5; Compl. ¶¶ 18, 19. While it appears that defendants ultimately fixed the oil tank and alley floor, Meyer Aff. ¶ 5, they did not remove the bulkheads and other materials intruding on the Trust Property, Compl. ¶ 18, and they replaced the concrete alleyway in such a manner as to cause rainwater to drain towards the Trust Property and further damage the Trust Building's foundation. Id. ¶ 19.

## DISCUSSION

### *I. Default Judgment*

The decision whether to grant a default judgment is left to sound judicial discretion. Shah v. New York State Dep't of Civil Service, 168 F.3d 610, 615 (2d. Cir. 1999); Briarpatch Ltd. v. Geisler Roberdeau, Inc., 513 F.Supp.2d 1, 3 (S.D.N.Y. 2007). In considering whether to enter a default judgment against an absentee party, the Court must first determine whether service of process has been properly effectuated upon the defaulting defendant and, second, whether the unchallenged facts alleged in the complaint state a legitimate cause of action. See, e.g., Kee v. Hasty, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *4 (S.D.N.Y. Apr. 14, 2004) (quoting 10A CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2682 (3d ed. 1998)).

---

[1] See *infra* note 5.

Before moving for entry of a default judgment under Rule 55(b), a party must first secure an "entry of default" from the Clerk of the Court under Rule 55(a). See American Alliance Co. v Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996); see also New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (Rule 55 provides a two-step process for obtaining a default judgment, of which the first step is obtaining the clerk's entry of default). In this case, the Clerk made an entry of default against defendant SGC, but not against Rafik Ahmad, owing to concerns regarding the validity of service. See Clerk's Entry of Default as to Shareef General Construction, D.E. #13; Staff notes (May 15, 2009 docket entry). As this Court shared those concerns,[2] the Court, in response to plaintiff's request for additional time to serve Ahmad, see Plaintiff's Memorandum of Law (May 20, 2009) ("Pl.'s 5/20/09 Mem."), at 7-8, D.E. #14-19, granted plaintiff sixty days in which to effectuate proper service. See Order Granting Plaintiff's Request for Extension of Time for Service on Rafik Ahmad (Sept. 2, 2009), D.E. #23. No further proof of service has been filed with the Court.

**A. Sufficiency of Service**

    **1. Service on Ahmad**

Plaintiff contends that, in accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure, and section 308(2) of New York's Civil Practice Law and Rules, Ahmad was properly served by leaving the summons with adults at two locations alleged to be Ahmad's actual places of business (to wit, the Adjacent Parcel and 105-20 Liberty Avenue in Ozone Park, New York), followed by first-class mailings to those locations. See Pl.'s Mem. at 2-3 &

---

[2] See infra page 5.

n.1 (citing Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2)); see also Summons (Feb. 6, 2009), D.E. #3; Summons (Apr. 1, 2009), D.E. #6. However, in order to comply with the service requirements of those rules, the defendant must regularly conduct business at the site of service, or there must be some "clear identification of the work performed by [the defendant] at that place of business." Velez v. Vassallo, 203 F.Supp.2d 312, 325 (S.D.N.Y. 2002) (citation omitted). In addition, delivery must be made to the defendant's actual place of business "at the time of service, and not when the cause of action arose." See Jackson v. County of Nassau, 339 F.Supp.2d 473, 478 (E.D.N.Y. 2004).

On the record presented, the Court cannot find that either address was Rafik Ahmad's "actual place of business" at the time of service. While plaintiff's submissions make clear that Rafik Ahmad was, at one point, owner of the Adjacent Parcel, the inquest papers further show that he transferred his interest in June of 2008, well in advance of plaintiff's attempted service upon him, at the location, in February 2009. See Summons (Feb. 6, 2009). Furthermore, plaintiff's papers are silent as to the nature of the premises at 105-20 Liberty Avenue, the other location to which the summons and complaint were delivered. See Summons (Apr. 1, 2009). As it cannot be determined whether either location was Ahmad's actual place of business when the summons and complaint were delivered, plaintiff's motion for a default judgment as to the individual defendant should be denied without prejudice, with leave to renew in the event Ahmad is properly served yet fails to respond to the complaint.[3]

---

[3] Consequently, this Report and Recommendation addresses the merits of plaintiff's motion for a default judgment only with respect to defendant SGC.

**2. Service on SGC**

In federal actions, service upon a corporation may be effectuated in a manner authorized under state law, see Fed. R. Civ. P. 4(h) (citing Fed. R. Civ. P. 4(e)(1)), or by delivering a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h) (emphasis added). In either circumstance, service of process on a corporation registered to do business in New York State may be effected by serving the office of New York's Secretary of State, in accordance with section 303 of New York's Limited Liability Company Law, which designates

> the secretary of state as agent of a domestic limited liability company or authorized foreign limited liability company [upon whom service] shall be made by personally delivering to and leaving with the secretary of state or his or her deputy . . . at the office of the department in the city of Albany, duplicate copies of such process together with the statutory fee.[4]

Limited Liab. Co. L. § 303(a); see N.Y. C.P.L.R. § 311-a.

Here, process server Carol Vogt delivered two copies of plaintiff's summons and complaint to the Secretary of State of New York at the Albany office on December 31, 2008, and paid the necessary fee of forty dollars. See Pl.'s Req. to Enter Default, Ex. C, D.E. #11-4. Accordingly, plaintiff has satisfied her obligation to serve process upon SGC. See Trini Realty Corp. v. Fulton Center LLC, 861 N.Y.S.2d 743, 744 (2d Dep't 2008) (process server's affidavit created presumption that service upon defendant LLC was effected by delivery to

---

[4] Though not required to do so under section 303, plaintiff subsequently mailed SCG copies of the summons and complaint. See Pl.'s Req. to Enter Default, Ex. C, D.E. #11-4.

Secretary of State); see also West Coast Realty Servs., Inc. v. Holness, No. 25460/05, 2007 WL 2192825, at *2 (N.Y. Sup. Aug. 1, 2007).

**B. Sufficiency of the Pleadings**

Even after obtaining proper jurisdiction over a defendant through adequate service, a plaintiff seeking entry of a default judgment must set forth facts sufficient to state a legitimate cause of action. See Chanel, Inc. v. Schwartz, No. 06-CV-3371 (BMC)(JO), 2007 WL 4180615, at *3 (E.D.N.Y. Nov. 19, 2007); Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., No. 04-CV-2985 (SMG), 2007 WL 201167, at *1 (E.D.N.Y. Jan. 23, 2007); see also 10A CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

A sufficient pleading in federal court consists of "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This rule requires more than a "formulaic recitation of the elements of a cause of action," see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted); rather, a pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citation omitted). If the facts are thus well-pled, the court assumes their veracity and determines whether such allegations "plausibly give rise to an entitlement to relief." Id. at 1950.

In challenging defendants' misconduct against the Trust Property, plaintiff asserts four

causes of action: negligence, trespass, nuisance, and destruction of and interference with property. Compl. ¶¶ 21-40. Because "a plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery," Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1997); see also Microsoft Corp. v. Computer Care Center, Inc., No. 06-CV-1429 (SLT)(RLM), 2008 WL 4179653, at *9 (E.D.N.Y. Sept. 10, 2008), the plaintiff need only aver sufficient facts under one theory in order to obtain damages for a claimed injury. Plaintiff's claims, as averred, identify two types of injuries: those flowing from defendants' trespass, and those that resulted from vibrations emanating from the Adjacent Property during demolition and construction. See Compl. ¶¶ 15-19; Affidavit of George Tucker Deming ("Deming Aff.") ¶ 8, D.E. #21. Consequently, this Court will address the adequacy of plaintiff's pleadings for trespass and negligence.

**1. Trespass**

Plaintiff has set forth facts sufficient to state a cause of action for trespass. "A person who enters the land of another without permission is a trespasser, even if he or she does so innocently or by mistake." Spellburg v. South Bay Realty, 854 N.Y.S.2d 563, 564 (3d Dep't 2008) (internal quotation marks and citation omitted); see also Elmowitz v. Executive Towers at Lido, LLC, 571 F.Supp.2d 370, 377 (E.D.N.Y. 2008). "[P]hysical entry by the trespasser upon another's land is not necessary, [though] the trespasser must have at least caused or directed another person to trespass." Golonka v. Plaza at Latham, LLC, 704 N.Y.S.2d 703, 706 (3d Dep't 2000). Additionally, the trespasser need not have expected "the damaging consequence of his intrusion," but rather "he must intend the act which amounts to or produces the unlawful invasion." Abbatiello v. Monsanto Co., 522 F.Supp.2d 524, 541 (S.D.N.Y.

2007) (internal citation and quotation marks omitted).

Here, the Complaint alleges that, on numerous occasions during demolition and construction on the Adjacent Property, defendants knowingly entered the Trust Property without plaintiff's permission. Compl. ¶ 14; see also Meyer Aff. ¶ 3. As evidence of these repeated intrusions, plaintiff points both to destruction of or damage to structures on the Trust Property and to defendants' installation of foreign materials on the Trust Property. Compl. ¶ 16; see also Meyer Aff. ¶ 3. Specifically, plaintiff complains that defendants placed steel bulkheads on the Trust Property to support Ahmad's new building, and erected lighting, wiring, and other electrical components that together constitute fixed encroachments on the Trust Property. Compl. ¶ 16. According to the Complaint, defendants ignored repeated demands to remove these encroachments. Id. ¶ 18.[5] Construing the pleading's various averments as true, the Court concludes that plaintiff has satisfied her obligations under Rule 8(a)(2) on the trespass claim.

**2. Negligence**

Plaintiff has also pled sufficient facts to state a claim for negligence. A landowner who engages in conduct on his property that creates a risk of injury to persons or property on

---

[5] In an affidavit filed in connection with plaintiff's motion for a default judgment, Mr. Meyers asserts that on several occasions on November 2, 2007, he spoke with "Mr. Ahmad," who agreed to "repair any damages . . . ." Meyer Aff. ¶ 4. However, the "Mr. Ahmad" referenced in the affidavit is apparently not the defendant Rafik Ahmad, but rather is Shareef Ahmad of defendant Shareef Construction: Mr. Meyers' affidavit further alleges that Mr. Meyer confirmed these discussions with "Mr. Ahmad" by sending "him" a confirming letter and list of damaged items, id., both of which documents are addressed to "Mr. Shareef Ahmad, c/o Shareef Construction, LLC," with a courtesy copy to Rafik Ahmad. See id. Ex. D, E.

adjoining premises must take reasonable precautions to avoid harm. See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc., 96 N.Y.2d 280, 290 (2001); see also Black v. George Weston Bakeries, Inc., No. 07-CV-853S, 2008 WL 4911791, at *3 (W.D.N.Y. Nov. 13, 2008). In particular, when an activity generates vibrations or concussive force, a party may be held liable for negligent performance of the activity resulting in damage to the adjacent property. See Fagan v. Pathe Indus., 86 N.Y.S.2d 859, 866 (1st Dep't 1949); see, e.g., Petillo v. Kennedy & Smith, 31 N.Y.S.2d 481, 481 (2d Dep't 1941) (finding of negligence justified upon proof that contractor could have conducted activity with little or no vibration and took no steps to correct the manner of performing work even after notice of the damage to adjacent building); Ockman v. T. L. James & Co., 124 So.2d 778, 779 (La. App. 1960) (sustaining judgment against defendants whose construction work caused severe vibrations on plaintiff's adjacent property, resulting in cracks in the walls and ceilings of plaintiff's residence).

Plaintiff claims in this case that defendants were reckless and negligent in their demolition and construction activities on the Adjacent Property. Compl. ¶¶ 22-24; see also Meyer Aff. ¶¶ 2, 5. As elaborated upon by plaintiff's expert, the "intense vibrations arising from construction or demolition work" destabilized soil beneath the Trust Building, causing cracks in its brick exterior. Deming Aff. ¶ 8. While defendants mended these fractures with mortar, the repairs appear to be merely cosmetic. Id. Furthermore, in attempting to repair the damaged alleyway on the Trust Property, defendants "angled the walkway in such a manner as to cause rainwater to drain towards the Trust Property," thereby damaging the foundation of the building. Compl. ¶ 19. Plaintiff's uncontested factual assertions sufficiently state a cause of action in negligence under Rule 8(a)(2).

*II. Damages*

The Court must next consider the appropriate measure of damages to be awarded plaintiff. By defaulting, a defendant admits to all well-pleaded allegations, except those pertaining to damages. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Traffic Sports USA, Inc. v. Segura, No. 06-3360(RJD)(CLP), 2008 WL 4890164, at *5 (E.D.N.Y. Nov. 12, 2008). The Court must make a separate, reasoned determination of damages, which may, but need not, include a hearing. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also J & J Sports Prods., Inc. v. Arhin, No. 07- 2875(SJ), 2009 WL 1044500, at *4 (E.D.N.Y. Apr. 17, 2009). In default cases, "where the plaintiff has filed reasonably detailed affidavits and a memorandum of law pertaining to the damages requested . . . and the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without an evidentiary hearing." Traffic Sports, 2008 WL 4890164, at *5.

Plaintiff here has filed an affidavit from licensed contractor George Deming that describes the damage to the Trust Property and contains expert estimates of the repair costs, see Deming Aff., along with a memorandum of law summarizing and tabulating those costs. See Plaintiff's Memorandum of Law (July 21, 2009) ("Pl.'s 7/21/09 Mem."), D.E. #22. Plaintiff seeks relief totaling $102,602.96 in compensatory damages, and $300,000 in punitive damages.

**A. Damages for Trespass**

"In order to recover compensatory damages, the plaintiff must demonstrate that the

-11-

damages complained of were proximately caused by the defendant's trespass." Dellaportas v. County of Putnam, 658 N.Y.S.2d 116, 117 (2d Dep't 1997); see also Integrative Nutrition, Inc. v. Academy of Healing Nutrition, 476 F.Supp.2d 291, 299 (S.D.N.Y. 2007). Most of the discrete cost estimates described by Deming arise from the trespassory actions of defendants on the Trust Property. These include: (1) removal of an improperly pitched concrete slab protruding onto the Trust Property, Deming Aff. ¶¶ 3-5; (2) remedial work on the siding and foundation of the Trust Building caused by water running off the slab, see Deming Aff. ¶¶ 6-7; (3) removal of flood lamps and security cameras protruding onto the Trust Property, see Deming Aff. ¶¶ 10-11; (4) removal by crane and cutting torch of bulkheads on the Trust Property, see Deming Aff. ¶¶ 12-13; (5) replacement of an air conditioner and air conditioning sleeve damaged by construction equipment, see Deming Aff. ¶¶ 14-15; and (6) repair to an alley door, sign, and roof, Affidavit of Barbara Olk ("Olk Aff."), Exs. C, D, D.E. #19-3, 19-4. These repair estimates total $31,602.96. See Pl.'s 7/21/09 Mem. at 7. Because each of the foregoing repairs has been discretely linked to an encroachment or unauthorized activities by defendants on the Trust Property, this Court recommends that plaintiff receive the total repair estimate of $31,602.96 in damages for trespass.

**B. Damages for Negligence**

The remaining damages claim is for $68,000.00, and pertains to cracks in the structural exterior, which plaintiff's expert has asserted were "caused by movement of the earth in connection with intense vibrations arising from construction or demolition work." Deming Aff. ¶ 8. The most substantial portion of this cost ($40,000) has been apportioned for a "grout injection" to improve the bearing capacity of the soil beneath the cracked foundation. See

Deming Aff. ¶ 9. Deming estimates that plaintiff will have to spend an additional $28,000 to repair the exterior brick and interior stucco on the cracked wall. Id. Plaintiff's assessment of damage to the wall is uncontroverted and plaintiff's expert has causally linked that damage to vibrations emanating from defendants' construction site. See Deming Aff. ¶ 8. Thus, this Court recommends that plaintiff be awarded $68,000.00 in damages for negligence.

Finally, plaintiff claims reimbursement for a $3,000 deduction from real estate taxes that would otherwise have been paid by a tenant who suffered broken merchandise as a result of defendants' construction work. Pl.'s 7/21/09 Mem. at 6; Olk Aff. Ex. B. Plaintiff does not, however, offer any admissible evidence linking the damage to defendants' negligence.[6] Therefore, plaintiff has not sustained her burden of proving her entitlement to recover for this alleged injury. See generally Meehan v. Snow, 494 F.Supp. 690, 695 (S.D.N.Y. 1980) (a default is "only conclusive as to liability," and "[i]t is for the Court to determine whether the relief requested flows from the facts."), rev'd on other grounds, 652 F.2d 274 (2d Cir. 1981).

**C. Punitive Damages**

A plaintiff may recover punitive damages for trespass on real property if she demonstrates that the trespasser acted "with actual malice . . . [or with] a wanton, willful, or reckless disregard of the party's right of possession." See Warm v. State of New York, 764 N.Y.S.2d 483, 484 (2d Dep't 2003) (internal quotation marks and citation omitted); Fareway Heights, Inc. v. Hillock, 752 N.Y.S.2d 515, 517 (4th Dep't 2002). An award of punitive

---

[6] The only evidence offered by plaintiff on this issue consists of an unsworn letter from plaintiff's tenant, thanking plaintiff "for deducting three thousand dollars from my real estate tax to help with the expenses that I incurred for broken merchandise due to The Rockaway Diner's construction of their new building." Olk Aff. Ex. B.

damages functions as a deterrent, but is appropriate only when it "bears a reasonable relation to the harm done and the flagrancy of the conduct causing it." Fareway Heights, 752 N.Y.S.2d at 517 (upholding jury's award of $25,000 in compensatory damages and $250,000 in punitive damages where defendants intentionally excavated ditch on plaintiff's property without consent and falsely represented to others that they had permission); see also Chlystun v. Kent, 586 N.Y.S.2d 410, 412 (3d Dep't 1992) (upholding jury's award of $15,000 in punitive damages where defendants repeatedly used plaintiff's property without permission, widened the roadway, and repeatedly verbally abused plaintiff).

To be sure, defendants' actions here evidence carelessness and an obliviousness to plaintiff's exclusive rights to possession over her property. However, this Court concludes that there are important facts that mitigate against a finding of willful, wanton, or reckless disregard for those same rights. First, it appears that defendants successfully repaired the oil tank and alley floor. Meyer Aff. ¶ 5. Second, defendants attempted to mend cracks in the Trust Building wall, albeit deficiently. Deming Aff. ¶ 8. Finally, defendants made repairs to the sidewalk in front of the Trust Building. Meyer Aff. ¶ 5. Although these last repairs ultimately resulted in further damage to the Trust Property and a notice of violation from the City of New York regarding the condition of the sidewalk, id., they were nonetheless consistent with a pattern of behavior demonstrating some minimal acknowledgment of wrongdoing, and not the kind of wanton disregard justifying a punitive award. See, e.g., Chlystun, 586 N.Y.S.2d at 412 (punitive award not justified for claim of destruction of property in relation to trespass where there was evidence that defendant had attempted to make repairs). Plaintiff has not established the kind of aggravating factors that would warrant an

award of punitive damages, let alone one for $300,000. See Warm, 764 N.Y.S.2d at 486 (affirming trial court's declination of request for punitive damages in trespass action); Litwin v. Town of Huntington, 669 N.Y.S.2d 634, 635 (2d Dep't 1998) (affirming dismissal of claim for punitive damages based on trespass). Accordingly, this Court respectfully recommends that plaintiff be denied her requested award of punitive damages.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that plaintiff's motion for default judgment be granted as to defendant SGC, awarding plaintiff compensatory damages in the amount of $99,602.96, and no punitive damages; and that plaintiff's motion for default judgment against defendant Ahmad be denied without prejudice, with leave to renew in the event he is properly served with process and fails to timely respond.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Judge Jack B. Weinstein on or before October 15, 2009. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED**

**Dated:** Brooklyn, New York
October 1, 2009

                                                **ROANNE L. MANN**
                                                **UNITED STATES MAGISTRATE JUDGE**